IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TECNICAS REUNIDAS SA, a Spanish corporation, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 08-425-DRH-PMF |
| BIG RIVER ZINC CORPORATION, a Delaware corporation, and ZINCOX RESOURCES PLC, an English company, | ) ) ) ) | Chief Judge David R. Herndon Magistrate Judge Phillip M. Frazier |
| Defendants. | ) ) | |

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF DEFENDANTS BIG RIVER ZINC CORPORATION AND ZINCOX RESOURCES PLC**

Defendant/Counter-Plaintiff BIG RIVER ZINC CORPORATION ("BRZ") and Defendant/Counter-Plaintiff ZINCOX RESOURCES PLC ("ZincOx") (collectively referred to as "Defendants" or "Counter-Plaintiffs"), by their undersigned attorneys, answer Plaintiff's Complaint as follows:

## I. NATURE OF ACTION

**Complaint, Para. 1:** This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the patent laws of the United States, 35 U.S.C. § 1 *et seq.*; the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.;* the Lanham Act, 15 U.S.C. §§ 1125(a) and 1126(h); the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.;* the common law of the State of Illinois; and, through implementation of the Paris Convention for the Protection of Industrial Property.

**Answer to Para. 1:** Defendants deny the allegations of Paragraph 1 for lack of

subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(1) and (6).

## II. THE PARTIES

**Complaint, Para. 2:** Plaintiff TR is a publicly-traded corporation organized and existing under the laws of Spain, having its principal place of business at c/Arapiles, 14,

28015 MADRID (SPAIN). Plaintiff TR is a leading engineering company in the design and construction of industrial plants of all types, including those in the field of oil and gas, petrochemicals, environmental engineering, hydrometallurgy, metallurgy and mining.

**Answer to Para. 2:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2.

**Complaint, Para. 3:** On information and belief, Defendant ZincOx is a publicly-traded corporation organized and existing under the laws of the United Kingdom, having its principal place of business at Knightway House, Park Street, Bagshot, Surrey, GU19 5AQ, United Kingdom.

**Answer to Para. 3:** Defendants admit that ZincOx is a publicly-traded corporation organized and existing under the laws of England and Wales, having its principal place of business at Knightway House, Park Street, Bagshot, Surrey, GU19 5AQ, United Kingdom.

**Complaint, Para. 4:** On information and belief, Defendant BRZ is a wholly-owned subsidiary of Defendant ZincOx and a corporation organized and existing under the laws of Delaware, having its principal place of business at 2401 Mississippi Avenue, Sauget, Illinois 62201. Defendant BRZ is an electrolytic zinc refinery (the "BRZ plant") located in Sauget, Illinois.

**Answer to Para. 4:** Defendants admit the allegations of Paragraph 4.

### III. JURISDICTION AND VENUE

**Complaint, Para. 5:** This is an action for a declaratory judgment of patent infringement, threatened or actual misappropriation of trade secrets, unfair competition, false advertising and/or false designation of origin under the Lanham Act, and common law unfair competition under the laws of the State of Illinois. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), 2201, 2202 and 15 U.S.C. § 1126(h) through implementation of the Paris Convention for the Protection of Industrial Property. This Court has supplemental jurisdiction over all other pendent claims asserted herein under 28 U.S.C. § 1367(a).

**Answer to Para. 5:** Defendants deny the allegations of Paragraph 5.

2

**Complaint, Para. 6:**  This Court has personal jurisdiction over Defendant BRZ. Defendant BRZ is qualified to do business in the State of Illinois. Defendant BRZ also has a regular and established place of business in Illinois and this District at 2401 Mississippi Avenue, Sauget, Illinois 62201, and is and has been doing business in Illinois and this District at all times relevant hereto.

**Answer to Para. 6:**  Defendants admit the allegations of Paragraph 6.

**Complaint, Para. 7:**   This Court has personal jurisdiction over Defendant ZincOx. Upon information and belief, at all times relevant hereto, Defendant ZincOx is transacting and/or has transacted business with, or as, Defendant BRZ, is committing and/or has committed tortious acts in Illinois and this District, and Defendant ZincOx's wrongful conduct, as set forth in this Complaint, arises out of and is related to the business it has transacted and the tortious acts it has committed in this State and District. For example, upon information and belief:

a.    By at least June 2006, Defendant ZincOx entered into a scheme with Defendant BRZ to unlawfully acquire, disclose, and/or use TR's patented technology, trade secrets, and other proprietary know-how to re-design and modify the BRZ plant in Illinois and this District, and Defendant BRZ and/or Defendant ZincOx have redeveloped and continue to redevelop the BRZ plant in Illinois and this District in furtherance of this unlawful conspiracy;

b.    Defendant ZincOx executives and/or employees routinely traveled to this District, have had communications with Defendant BRZ representatives and others located in Illinois and this District to assist with and/or participate in the redevelopment and modification of the BRZ plant during all relevant times hereto, and have taken the acts listed in d. and e. below;

c.    Defendant ZincOx executives, employees and/or representatives have unlawfully acquired, disclosed, and/or used TR's technology, trade secrets, and other proprietary know-how and/or induced the unlawful acquisition and/or use of TR's technology, trade secrets, and other proprietary know-how by Defendant BRZ and others involved with the redevelopment and modification of the BRZ plant in Illinois and this District during all relevant times hereto;

d.    Defendant BRZ is an agent and/or alter-ego of Defendant ZincOx, as evidenced at least by the facts discussed herein, including, but not limited to: (i) Defendant ZincOx directing Defendant BRZ to use TR's patented technology, trade secrets, and other proprietary know-how in the redevelopment and modification of the BRZ plant; (ii) Defendant ZincOx negotiating directly with TR for a process license to use TR's patented technology, trade secrets, and other proprietary know-how in the redevelopment and modification of the BRZ plant; (iii) Defendant ZincOx directing Defendant BRZ to use particular firms and/or consultants in connection with the redevelopment and modification of the BRZ plant; (iv) Defendant ZincOx completing a preliminary economic study for the redevelopment and modification of the BRZ plant; (v) Defendant ZincOx completing a cost estimate and feasibility study suitable for project finance for the redevelopment and modification of the BRZ plant; (vi) Defendant ZincOx

providing and raising funds needed for the redevelopment and modification of the BRZ plant; (vii) Defendant ZincOx advertising and promoting the BRZ plant on its website; (viii) Defendant ZincOx advertising and promoting the BRZ plant in press releases; (ix) Defendant ZincOx reemploying key employees of Defendant BRZ after its purchase of Defendant BRZ in order to facilitate a rapid start up for the new operation and to assist with the redevelopment and modification of the BRZ plant; (x) Defendant ZincOx integrating key Defendant BRZ employees with Defendant ZincOx's Belgian-based engineers, who are working as onsite development teams with the local contractors for the redevelopment and modification of the BRZ plant; (xi) Defendant ZincOx designing and constructing a pilot plant in Belgium to assist in the redevelopment and modification of the BRZ plant, (xii) two of the three directors on the Board of Directors of Defendant BRZ are directors on the Board of Directors and/or executives of Defendant ZincOx, and (xiii) on information and belief, Defendant BRZ is wholly owned and controlled by Defendant ZincOx; and

e.     On information and belief, Defendant ZincOx operates an integrated zinc and iron recycling project in Ohio (called "the Ohio Project"), through its wholly-owned subsidiary ZincOx (USA) Recycling, Inc., a corporation organized and existing under the laws of Delaware, having its principal place of business at 876 Otter Creek Road, Oregon, Ohio 43616-1200.  ZincOx operates the Ohio Project through a strategic alliance with Envirosafe Services of Ohio Inc. ZincOx has announced that it received the "Final Permit to Install" from the Ohio Environmental Protection Agency for the Ohio project and that site work was to begin there in May 2008. The Ohio Project will be used to recover zinc and lead as an oxide concentrate ("HZO") from the electric arc furnace dust generated by scrap steel recycling factories which would be treated by the BRZ plant.

**Answer to Para. 7:**  Defendants deny the allegations of Paragraph 7.


**Complaint, Para. 8:**   Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), and (d), 1400(b) and pursuant to 15 U.S.C. § 1126(h) through implementation of the Paris Convention for the Protection of Industrial Property.

**Answer to Para. 8:**  Defendants admit that venue is proper.


## IV. FACTS PERTINENT TO ALL CAUSES OF ACTION

**Complaint, Para. 9:**  TR is a leading international engineering company involved in all aspects of the design and construction of industrial plants and power generation plants worldwide.

**Answer to Para. 9:**  Defendants lack knowledge or information sufficient to form

a belief about the truth of the allegations in Paragraph 9.

**Complaint, Para. 10:**  Since the 1970s, TR has been involved in the research and development of proprietary solvent extraction ("SX") technologies for zinc. Today, TR is recognized as the world leader in proprietary zinc SX technologies.

**Answer to Para. 10:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10.

**Complaint, Para. 11:**  The original SX process developed by TR in the 1970s was called the "ZINCEX" process. Thereafter, TR developed a modified SX process in the 1980s referred to as the "MODIFIED ZINCEX" process. Both the ZINCEX process and the MODIFIED ZINCEX process include the leaching, solvent extraction and electrowinning for treatment of primary or secondary raw materials containing zinc.

**Answer to Para. 11:**  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11.

**Complaint, Para. 12:**  TR owns U.S. Patent No. 6,869,520 (the "'520 Patent") entitled "Process for the Continuous Production of High Purity Electrolytic Zinc or Zinc Compounds from Zinc Primary or Secondary Raw Materials" (attached hereto as EXHIBIT A). The '520 Patent was duly and legally issued by the United States Patent and Trademark Office on March 22, 2005 with a priority date of December 17, 1999. The '520 Patent describes and claims the pioneering inventions of TR's scientists, relating to an improved production process for high purity electrolytic zinc or zinc compounds by a hydro-metallurgical process starting from zinc containing primary or secondary raw materials. TR is the owner by assignment of the '520 Patent. As such, TR has the right to enforce the '520 Patent and the right to seek both a preliminary and permanent injunction and/or to recover damages for infringement of the '520 Patent.

**Answer to Para. 12:**  Defendants deny all of the allegations of Paragraph 12 except as to the allegation of ownership, of which the Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation.

**Complaint, Para. 13:**  The '520 Patent claims a solvent extraction process consisting of successive physical and chemical purification zones that can continuously and simultaneously treat zinc containing raw materials of different origins (whether primary or secondary raw materials), resulting in a high recovery yield and delivery of zinc or zinc compounds of extreme purity.

**Answer to Para. 13:** Defendants deny the allegations of Paragraph 13.

**Complaint, Para. 14:** The pioneering nature of the proprietary zinc SX process developed by TR and the inventions claimed in the '520 Patent have been widely heralded by the hydrometallurgy scientific community. By virtue of this attention, TR's zinc SX extraction technologies and processes have generated fame, notoriety and goodwill.

**Answer to Para. 14:** Defendants deny the allegations of Paragraph 14.

**Complaint, Para. 15:** In or about 1976, Anglo American Corporation ("AAC") discovered a large deposit of zinc in the south-west corner of Namibia in southern Africa. For many years prior to knowing about TR's pioneering inventions, AAC tried to develop the deposit at Namibia by applying traditional minerallurgical and hydrometallurgical techniques, but the deposit was considered untreatable because of metallurgical processing problems.

**Answer to Para. 15:** Defendants deny the allegation referring to "TR's pioneering inventions" and lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 15.

**Complaint, Para. 16:** In or about 1996, Reunion Mining plc ("Reunion"), a mining exploration, development and/or exploitation company, entered into an agreement with AAC to complete a bankable feasibility study on the deposit at Namibia, called the "Skorpion Project," with the objective of developing the route for efficient zinc extraction in the deposit at Namibia, in or about 1997.

**Answer to Para. 16:** Defendants admit the allegations of Paragraph 16.

**Complaint, Para. 17:** Reunion entered into a confidential collaboration with several companies to perform the bankable feasibility study. TR ran the pilot plant for Reunion utilizing its proprietary SX technologies and the modified ZINCEX process know-how; Union Miniere S.A. produced the operational know-how and mechanical equipments for electrowinning.

**Answer to Para. 17:** Defendants admit the allegations stated in the first sentence of Paragraph 17 and deny the allegations stated in the last sentence of Paragraph 17.

6

**Complaint, Para. 18:**  In or about 1998, TR's proprietary SX technologies for the bankable feasibility study were used, and the corresponding process was tested at TR's pilot plant in Spain using certain SX process steps claimed in the '520 Patent. This was the first time that special high grade ("SHG") zinc (i.e. greater than 99.990% purity) was produced from the deposit at Namibia, and TR established that the use of TR's proprietary zinc SX technologies would permit the entire process stream to be treated for the selective recovery of zinc, a feat not previously achieved in the field of zinc purification.

**Answer to Para. 18:**  Defendants deny the allegations of Paragraph 18.

**Complaint, Para. 19:**  The bankable feasibility study for the Skorpion project was highly successful, showing that the proprietary process of TR's zinc SX technology, including the process described and claimed in the '520 Patent, would produce zinc at the lowest cost in the world.

**Answer to Para. 19:**  Defendants deny the allegations of Paragraph 19.

**Complaint, Para. 20:**  Based on the successful results of the bankable feasibility study, AAC purchased Reunion in 1999 for N$362 million (Namibian dollars), which is about US$75 million.

**Answer to Para. 20:**  Defendants deny the allegations of Paragraph 20.

**Complaint, Para. 21:**  AAC thereafter entered into a confidential know how license and supply agreement with TR in 2000.

**Answer to Para. 21:**  Defendants lack knowledge or information sufficient to

form a belief about the truth of the allegations in Paragraph 21.

**Complaint, Para. 22:**  At all times, TR's proprietary SX technologies were kept confidential and no one had access to these proprietary SX technologies unless secrecy and nondisclosure agreements were executed.

**Answer to Para. 22:**  Defendants deny the allegations of Paragraph 22.

**Complaint, Para. 23:**  TR's proprietary SX technologies were implemented in the conversion of the Skorpion refinery to full-scale operations starting in or about 2000 through 2003 and continue to be used there today in full-scale production.

**Answer to Para. 23:**  Defendants deny the allegations of Paragraph 23.

**Complaint, Para. 24:**   TR's proprietary zinc SX process now permits the production of ultrapure electrolytes suitable for the high-volume production of Special High Grade ("SHG") zinc in accordance with ASTM B6-06 specifications (i.e. greater than 99.990% purity).

**Answer to Para. 24:**  Defendants deny the allegations of Paragraph 24.

**Complaint, Para. 25:**  TR is the only company in the world that has developed a proprietary zinc SX process with the capability of producing commercial tonnage of zinc at a purity greater than 99.995% (also known as LME Grade in accordance with ASTM B6-06 specifications), and today TR derives substantial revenues from licensing this proprietary zinc SX process technology in process licenses worldwide.

**Answer to Para. 25:**  Defendants deny the allegations of Paragraph 25.

**Complaint, Para. 26:**  ZincOx's Chairman, Andrew Woollett, founded Reunion in 1989. As noted above, Reunion was engaged in mineral exploration and mining in Africa, and Reunion obtained access in confidence to TR's proprietary zinc SX trade secrets and confidential information during the Skorpion Project in Namibia.

**Answer to Para. 26:**   Defendants admit the allegations of the first sentence above, but otherwise deny the allegations of Paragraph 26.

**Complaint, Para. 27:**   In May 1999, Andrew Woollett terminated his employment with Reunion following AAC's successful bid to acquire Reunion. Before Andrew Woollett left Reunion, he was a non-executive director at ZincOx. However, after leaving Reunion, Andrew Woollett accepted the position of Managing Director at ZincOx, and today he is the Chairman of ZincOx.

**Answer to Para. 27:**   Defendants admit the allegations of the first sentence above, but otherwise deny the allegations in Paragraph 27.

**Complaint, Para. 28:**  Noel Masson also was employed by Reunion and was a member of the Reunion Board of Directors. In 1997, Noel Masson organized ZincOx and is currently listed as a Consultant to ZincOx on ZincOx's website. Noel Masson obtained access in confidence to TR's proprietary zinc SX trade secrets and confidential information during the Skorpion Project in Namibia and to TR's pilot plant information

during his employment at Reunion.

**Answer to Para. 28:** Defendants deny the allegations in Paragraph 28.

**Complaint, Para. 29:**   In or about 1999, Duncan Turner worked with TR in connection with assessing the feasibility of another zinc extraction project based on a zinc oxide mine in Kazakhstan. In the course of working with TR during that feasibility study, Duncan Turner obtained access in confidence to TR's proprietary zinc SX trade secrets and confidential information. On its website, ZincOx indicates that Duncan Turner has been associated with or employed by ZincOx.

**Answer to Para. 29:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 29.

**Complaint, Para. 30:**   In or about 1999, Noel Masson worked with Duncan Turner and TR in connection with assessing the feasibility of the potential zinc extraction project based on a zinc oxide mine in Kazakhstan. On information and belief, in the course of working with Duncan Turner and TR at that time, Noel Masson obtained access in confidence to TR's proprietary zinc SX trade secrets and confidential information. In the Prospectus issued by ZincOx on December 4, 2001, ZincOx acknowledges that the technologies utilized by ZincOx may infringe the intellectual property rights of third parties.

**Answer to Para. 30:**   Defendants admit the allegations of the first sentence of Paragraph 30, and deny the allegations of the last two sentences of Paragraph 30.

**Complaint, Para. 31:**   In 2006 and expressly for use by ZincOx at the BRZ plant in the United States, ZincOx, represented by Andrew Woollett, entered into negotiations with TR for a license to TR's proprietary zinc SX technologies licensed for use at the Skorpion refinery.

**Answer to Para. 31:** Defendants deny the allegations in Paragraph 31.

**Complaint, Para. 32:**   After several months of negotiation, ZincOx abruptly discontinued the licensing negotiations, refused to respond to TR's further requests for discussion, and on information and belief, secretly entered into a conspiracy to infringe TR's intellectual property rights in its patented technology, trade secrets, and other proprietary know-how.

**Answer to Para. 32:** Defendants deny the allegations of Paragraph 32.

**Complaint, Para. 33:**  TR's proprietary zinc SX technologies include, but are not limited to, the proprietary process and design specifications for: solvent extraction circuits; suitable zinc pregnant liquor (ZPL) solutions; acid raffinate; organic phase components and concentrations; chemical designs and operating conditions, such as residence times, temperature, and acidity requirements; type and grade of agitation; number and choice of equipment design, including distribution and design of equipment, mixers (e.g., physical and chemical steps and parameters) and settlers (e.g., lineal velocities, residence times and flow rates); proprietary know-how regarding the effect of impurities and impurities extraction; stripping solutions; leaching and electrowinning processes, including but not limited to the unique combination and interrelationship of the SX processes with the leaching, purification and electrowinning processes; and other proprietary special hydrometallurgical and engineering techniques and proprietary specifications created and designed to guarantee process performance, including industrial scale output (hereinafter referred to in the aggregate as TR's "proprietary zinc TR-SX trade secrets and confidential information").

**Answer to Para. 33:**  Defendants deny the allegations of Paragraph 33.

**Complaint, Para. 34:**  TR's proprietary zinc TR-SX trade secrets and confidential information constitute proprietary know-how separate and apart from the inventions in the '520 Patent.

**Answer to Para. 34:**  Defendants deny the allegations of Paragraph 34.

**Complaint, Para. 35:**  TR's proprietary zinc TR-SX trade secrets and confidential information are not generally known in the trade, and TR derives economic value and a competitive advantage in the worldwide marketplace from its proprietary zinc TR-SX trade secrets and confidential information.

**Answer to Para. 35:**  Defendants deny the allegations of Paragraph 35.

**Complaint, Para. 36:**  At all times, TR has used reasonable measures to protect its proprietary zinc TR-SX trade secrets and confidential information, including the use of proprietary process licenses, non-disclosure agreements, disclosure on a need-to-know basis in confidential relationships, restricted access, physical security measures and the like.

**Answer to Para. 36:**  Defendants deny the allegations of Paragraph 36.

**Complaint, Para. 37:**  In early 2006, ZincOx acquired the BRZ plant in Sauget, Illinois. ZincOx has also entered into an integrated zinc and iron recycling project in

Ohio (called "the Ohio Project").

**Answer to Para. 37:** Defendants admit the allegations of the last sentence above, but otherwise deny the allegations of Paragraph 37.

**Complaint, Para. 38:** At the Ohio Project, a rotary hearth furnace will be used to treat electric arc furnace dust (EAFD), a waste material produced when galvanized steel is recycled. This process in Ohio will be used to recover zinc and lead in an oxide concentrate ("HZO").

**Answer to Para. 38:** Defendants admit the allegations in Paragraph 38.

**Complaint, Para. 39:** The HZO then will be sent to the BRZ plant in Sauget, Illinois. ZincOx announced that the HZO will be purified in "a new solvent extraction unit" which, upon information and belief, will be built and derived from the unauthorized acquisition, disclosure and use of TR's proprietary zinc TR-SX trade secrets and confidential information and will constitute infringement of the '520 Patent.

**Answer to Para. 39:** Defendants deny the allegations of Paragraph 39.

**Complaint, Para. 40:** On November 15, 2007, the Illinois EPA issued a Construction Permit to Defendant BRZ for the construction at the BRZ plant of an HZO zinc recovery unit, entailing the construction of several new process emission units, including units for a new solvent extraction process operation, specifically units for organic regeneration, extraction, scrubbing pump and stripping tanks, and a kerosene tote and D2EHPA tote. ZincOx has stated that the ZnSO4 solution produced by the traditional techniques at the BRZ plant will be purified with a new solvent extraction process proprietary to and provided by ZincOx.

**Answer to Para. 40:** Defendants admit the allegations stated in the first sentence above, but otherwise deny the remainder of the allegations in Paragraph 40.

**Complaint, Para. 41:** On February 29, 2008, ZincOx announced that it received the "Final Permit to Install" from the Ohio Environmental Protection Agency for the Ohio project. Site work was expected to begin there in May 2008.

**Answer to Para. 41:** Defendants admit the allegations of Paragraph 41.

**Complaint, Para. 42:** On information and belief, Defendants' actions and

representations as set forth herein in the foregoing and subsequent paragraphs constitute the threatened or actual misappropriation of the zinc TR-SX trade secrets and confidential information without TR's authorization or consent.

**Answer to Para. 42:** Defendants deny the allegations of Paragraph 42.

**Complaint, Para. 43:** On information and belief, Defendants will import, sell, offer for sale or use products in the U.S. made using a process covered by the claims of the '520 Patent.

**Answer to Para. 43:** Defendants deny the allegations of Paragraph 43.

**Complaint, Para. 44:** On information and belief, Defendants have already taken significant steps to use a process covered by the claims of the '520 Patent at the BRZ plant in Sauget, Illinois.

**Answer to Para. 44:** Defendants deny the allegations of Paragraph 44.

**Complaint, Para. 45:** On information and belief, Defendants intend to use TR's patented zinc SX process invented by TR and licensed for use at the Skorpion refinery at the BRZ plant.

**Answer to Para. 45:** Defendants deny the allegations of Paragraph 45.

**Complaint, Para. 46:** On information and belief, Defendants have taken at least the following steps to use TR's patented process at the BRZ plant:

      a.      completing a preliminary economic study for the redevelopment of the BRZ plant, including the use of TR's patented zinc SX technology licensed for use at the Skorpion refinery at the BRZ plant;

      b.      completing a cost estimate and feasibility study suitable for project finance for the redevelopment of the BRZ plant, including the use of TR's patented zinc SX technology licensed for use at the Skorpion refinery at the BRZ plant;

      c.      planning for the redevelopment of the BRZ plant to be undertaken as rapidly as possible;

      d.      planning for the refurbishment of the BRZ plant and installation and implementation of the new zinc SX facility to the BRZ plant, which will take approximately 16 months;

      e.      planning for the BRZ plant to be operational in the first quarter of 2009;

      f.      advertising and promoting the BRZ plant on their websites, where they provide pictures of the progress of the redevelopment of the BRZ plant showing the proposed location of the new zinc SX facility;

g.    advertising and promoting the BRZ plant in press releases;

h.    reemploying key employees of Defendant BRZ in order to facilitate a rapid start up for the new operation and to assist with the development of the BRZ plant;

i.    integrating key BRZ employees with Defendant ZincOx's Belgian-based engineers, who are working as onsite development teams with the local contractors;

j.    retaining outside consultants, contractors and/or firms to assist with the design and development of the BRZ plant;

k.    designing and constructing a pilot plant in Belgium that includes a solvent extraction circuit;

l.    conducting demolition work and preparing the site of the BRZ plant for construction; and

m.    filing documents with the Illinois Environmental Protection Agency seeking approval for redevelopment of the BRZ plant.

**Answer to Para. 46:** Defendants deny the allegations of Paragraph 46.


**Complaint, Para. 47:**  On information and belief, Defendants are fully aware of the existence of the '520 Patent and that using TR's patented zinc SX technology licensed for use at the Skorpion refinery will constitute infringement of the '520 Patent.

**Answer to Para. 47:** Defendants deny the allegations of Paragraph 47.


**Complaint, Para. 48:**  As a result of Defendants' acts and conduct to date, an actual justiciable controversy that is sufficiently definite and concrete and of sufficient immediacy regarding the infringement of the '520 Patent now exists.

**Answer to Para. 48:** Defendants deny the allegations of Paragraph 48.


**Complaint, Para. 49:**  On information and belief, Defendants' promotion of the BRZ project is based upon the infringement and misappropriation of TR's intellectual property rights. Defendants therefore seek to unfairly and unlawfully trade on the goodwill and worldwide recognition of TR's proprietary zinc TR-SX trade secrets and confidential information without either acknowledging the design, development, invention or ownership of the '520 Patent and TR's proprietary zinc TR-SX process technology or obtaining proper authorization from TR.

**Answer to Para. 49:** Defendants deny the allegations of Paragraph 49.


**Complaint, Para. 50:**  On information and belief, Defendants have claimed falsely and publicly that Defendant ZincOx, its management team, and/or its affiliates

designed, developed or invented the zinc SX process in use at the Skorpion refinery when, in fact, TR designed, developed, and/or invented the zinc SX process in use at the Skorpion refinery. For example:

      a.    In or about June 19, 2006, Defendants describe the zinc SX process that they intend to use at the BRZ plant as follows:

> ZincOx plans to redevelop the plant to treat EAFD. The future operation will require the construction of a new leach and purification plant. These operations will be essentially the same as those successfully developed by the ZincOx management team, while at Reunion Mining PLC, for the Skorpion electrolytic refining, in Namibia.

A true and correct copy of this report is attached hereto as EXHIBIT B-1.

      b.    Similarly, in or about June 5, 2006, Defendants describe the zinc SX process that they intend to use at the BRZ plant as follows:

> The future BRZ recycling operation will require the construction of a new leach and purification plant. This plant will be essentially the same as that successfully designed by the ZincOx management team, when at Reunion Mining PLC, for the Skorpion electrolytic zinc refinery, in Namibia.

A true and correct copy of this press release is attached hereto as EXHIBIT B-2.

      c.    Likewise, in or about February 20, 2007, Defendants describe the zinc SX process that they intend to use at the BRZ plant as follows:

> The ZincOx management team used the solvent extraction process in the design of the flowsheet for the Skorpion zinc oxide deposit in Namibia, where it now accounts for 150,000 tonnes of zinc metal production per annum.

A true and correct copy of this press release is attached hereto as EXHIBIT B-3.

      d.    In a March 2007 report, Defendant ZincOx, in describing the zinc SX process that it intends to use at the BRZ plant, claims that, in connection with the Skorpion Project, Noel Masson:

> found a solution by the right combination of pH, temperature and dissolution process coupled with solvent extraction using a standard reagent Di-(2-ethyl hexyl) phosphoric acid (DEHPA).

A true and correct copy of this report is attached hereto as EXHIBIT B-4.

      e.    On its website, Defendant ZincOx describes the zinc SX process that it intends to use at the BRZ plant as follows:

ZincOx plans to build a new leach and purification plant based on the treatment of an oxide concentrate (HZO), the product of the Ohio and Aliaga Recycling Projects. The new plant will be located on the BRZ site and will use purification technology recently demonstrated at Skorpion, in Namibia, the world's tenth largest zinc mine.

A true and correct copy of the relevant portions of Defendant ZincOx's website are attached hereto as EXHIBIT B-5.

       f.      On its website, Defendant ZincOx also describes the zinc SX process that it intends to use at the BRZ plant as follows:

Test work by ZincOx on various EAFD materials has shown that the hydrometallurgical process developed by the management of the company [ZincOx] to recover zinc from the Skorpion deposit in Namibia can be applied to the treatment of EAFD.

A true and correct copy of the relevant portions of Defendant ZincOx's website are attached hereto as EXHIBIT B-6.

**Answer to Para. 50:** Defendants deny the allegations of Paragraph 50.

**Complaint, Para. 51:** Defendants' false designations of the origin of the zinc SX process licensed for use at the Skorpion refinery made in press releases posted on the Internet and circulated around the world has caused, and is likely to continue to cause, confusion, mistake, or deception in the trade and to the public at large that Defendants designed, developed, invented and/or own the zinc SX process licensed for use at the Skorpion refinery, that TR is affiliated with Defendants, that TR does not own the zinc SX process licensed for use at the Skorpion refinery, and/or that TR has sponsored or authorized Defendants' activities, none of which is true.

**Answer to Para. 51:** Defendants deny the allegations of Paragraph 51.

**Complaint, Para. 52:** Defendants have engaged in these foregoing activities without permission or authorization from TR, following ZincOx's abrupt termination of negotiations with TR to license TR's proprietary zinc TR-SX trade secrets and confidential information. Upon information and belief, such activities were willfully and maliciously taken in bad faith and with full knowledge of TR's design, development, invention and/or ownership of the proprietary zinc SX process in use at the Skorpion refinery, with the intent to deceive and mislead the public into believing that Defendants designed, developed, invented and/or own that process technology or that Defendants activities are sponsored, licensed, or authorized by, or affiliated, connected, or otherwise

associated with, TR.

   **Answer to Para. 52:** Defendants deny the allegations of Paragraph 52.

   **Complaint, Para. 53:**  On information and belief, Defendants' foregoing false and misleading statements and actions were made with the intent to trade upon the fame, notoriety and goodwill of TR's proprietary zinc TR-SX process technology.

   **Answer to Para. 53:** Defendants deny the allegations of Paragraph 53.

   **Complaint, Para. 54:**  Defendants' statements and actions are likely to cause confusion or mistake or to deceive consumers, as well as Defendants' own shareholders and potential investors, into thinking that Defendants designed, developed, invented and/or own the zinc SX process in use at the Skorpion refinery or that Defendants' reference to or use of that process is sponsored, licensed, or otherwise authorized by, or affiliated, connected or otherwise associated with TR.

   **Answer to Para. 54:** Defendants deny the allegations of Paragraph 54.

   **Complaint, Para. 55:**  Defendants' statements and actions also are disparaging of TR's business, services, and products. Misinforming TR's potential or actual customers that TR did not design, develop, or invent and does not own the zinc SX process in use at the Skorpion refinery attacks TR's business reputation and indirectly undermines the quality and reliability of TR's business, services, and products.

   **Answer to Para. 55:** Defendants deny the allegations of Paragraph 55.

   **Complaint, Para. 56:**  Upon information and belief, TR already has lost sales and revenues based on Defendants' false and misleading statements and unfair actions.

   **Answer to Para. 56:** Defendants deny the allegations of Paragraph 56.

   **Complaint, Para. 57:**  Upon information and belief, Defendants' statements and actions have caused and will continue to cause TR great and irreparable harm and damage. Unless restrained and enjoined by this Court, Defendants will persist in their unlawful activities, thereby causing further damage and irreparable harm to TR and to the public interest.

   **Answer to Para. 57:** Defendants deny the allegations of Paragraph 57.

   **Complaint, Para. 58:**  TR has no adequate remedy at law.

**Answer to Para. 58:** Defendants deny the allegations of Paragraph 58.

## COUNT ONE: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '520 PATENT

**Complaint, Para. 59:** TR repeats and realleges the averments of paragraphs 1-58 as if fully set forth herein.

**Answer to Para. 59:** Defendants repeat and reallege the answers to paragraphs 1 through 58 as if repeated verbatim herein.

**Complaint, Para. 60:** There is an actual controversy between TR and Defendants as to Defendants' impending infringement of the claims of the '520 Patent.

**Answer to Para. 60:** Defendants deny the allegations of Paragraph 60.

**Complaint, Para. 61:** On information and belief, Defendants are building a new zinc SX facility at the BRZ plant that will infringe the claims of the '520 Patent.

**Answer to Para. 61:** Defendants deny the allegations of Paragraph 61.

**Complaint, Para. 62:** On information and belief, Defendant BRZ's actions will constitute direct infringement of the claims of the '520 Patent in violation of 35 U.S.C. § 271(a).

**Answer to Para. 62:** Defendants deny the allegations of Paragraph 62.

**Complaint, Para. 63:** On information and belief, Defendant ZincOx will infringe, has induced the impending infringement of, and/or has contributed to the impending infringement of the claims of the '520 Patent by using, inducing the use of or contributing to the use of, the same or equivalent zinc SX process in use at the Skorpion refinery at the BRZ plant.

**Answer to Para. 63:** Defendants deny the allegations of Paragraph 63.

**Complaint, Para. 64:** On information and belief, the actions of Defendant BRZ and the actions of Defendant ZincOx, alone and in concert with Defendant BRZ, will constitute direct and/or indirect infringement of the claims of the '520 Patent in violation

of 35 U.S.C. § 271(a), (b) and/or (c).

**Answer to Para. 64:** Defendants deny the allegations of Paragraph 64.

**Complaint, Para. 65:**   The actions of Defendant BRZ and the actions of Defendant ZincOx, alone and in concert with Defendant BRZ, constitute sufficient action in preparation for an entry into the market to create a dispute that is definite and concrete, that touches the legal relations of parties having adverse legal interests, and that is real and substantial.

**Answer to Para. 65:** Defendants deny the allegations of Paragraph 65.

**Complaint, Para. 66:**   At all times, upon information and belief, Defendants' actions to build a new SX unit at the BRZ plant that will infringe the '520 Patent has been and continues to be deliberate and willful, and is in full knowledge of the existence of the '520 Patent.

**Answer to Para. 66:** Defendants deny the allegations of Paragraph 66.

**Complaint, Para. 67:**   Defendants' actions to build the new SX plant that will, upon information and belief, infringe the claims of the '520 Patent and have caused and will continue to cause TR irreparable harm, for which there is no adequate remedy at law.

**Answer to Para. 67:** Defendants deny the allegations of Paragraph 67.

## COUNT TWO: THREATENED OR ACTUAL MISAPPROPRIATION OF TRADE SECRETS

**Complaint, Para. 68:**  TR repeats and realleges the averments of paragraphs 1-58 as if fully set forth herein.

**Answer to Para. 68:**  Defendants repeat and reallege the answers to paragraphs 1

through 58 as if repeated verbatim herein.

**Complaint, Para. 69:**  TR's proprietary zinc TR-SX trade secrets and confidential information, set forth individually and collectively in paragraph 33, *supra,* are statutory "trade secrets" protected by the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*

**Answer to Para. 69:**  Defendants deny the allegations of Paragraph 69.

**Complaint, Para. 70:**  At all times, TR has taken reasonable measures to protect its proprietary zinc TR-SX trade secrets and confidential information and TR derives economic value and competitive advantage from such information not being generally known to the public or trade.

**Answer to Para. 70:**  Defendants deny the allegations of Paragraph 70.

**Complaint, Para. 71:**  On information and belief, there exists the threatened or actual misappropriation of trade secrets by the Defendants, acting individually and in concert, to acquire, disclose and/or use, by improper means, TR's proprietary zinc TR-SX trade secrets and confidential information for their own benefit and/or the benefit of others without TR's authorization and consent.

**Answer to Para. 71:**  Defendants deny the allegations of Paragraph 71.

**Complaint, Para. 72:**  Defendants, acting individually and in concert, know or have reason to know that they have acquired TR's proprietary zinc TR-SX trade secrets and confidential information under circumstances giving rise to a duty to maintain the secrecy, or limit the use of, such information, and/or that such information was obtained or derived from others who owe a duty to TR to maintain the confidentiality of such information.

**Answer to Para. 72:**  Defendants deny the allegations of Paragraph 72.

**Complaint, Para. 73:**  On information and belief, TR has suffered or will suffer damages, and Defendants have or will be unjustly enriched in an amount to be proven at trial, as a direct result of Defendants' threatened or actual misappropriation of TR's proprietary zinc TR-SX trade secrets and confidential information.

**Answer to Para. 73:**  Defendants deny the allegations of Paragraph 73.

**Complaint, Para. 74:**  Defendants' threatened or actual misappropriation of TR's proprietary zinc TR-SX trade secrets and confidential information has been willful and malicious and entitles TR to exemplary damages and an award of attorneys' fees and costs pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*

**Answer to Para. 74:**  Defendants deny the allegations of Paragraph 74.

**Complaint, Para. 75:**  TR also is entitled to injunctive relief to prevent the threatened or actual misappropriation of its proprietary zinc TR-SX trade secrets and confidential information by Defendants pursuant to the Illinois Trade Secrets Act, 765

ILCS 1065/1 *et seq.*

  **Answer to Para. 75:** Defendants deny the allegations of Paragraph 75.

## COUNT THREE: FEDERAL FALSE ADVERTISING

  **Complaint, Para. 76:**  TR repeats and realleges the averments of paragraphs 1-58 as if fully set forth herein.

  **Answer to Para. 76:** Defendants repeat and reallege the answers to paragraphs 1 through 58 as if repeated verbatim herein.

  **Complaint, Para. 77:**  On information and belief, Defendants have made false and misleading descriptions and representations of fact in their advertising and promotion concerning the nature, characteristics, qualities, and geographical origin of Defendants' goods, services, and commercial activities that violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

  **Answer to Para. 77:** Defendants deny the allegations of Paragraph 77.

  **Complaint, Para. 78:**  On information and belief, Defendants' false and misleading descriptions and representations of fact have deceived and are likely to deceive purchasers and consumers of zinc SX process technology into purchasing from Defendants instead of from TR, thereby injuring TR's proprietary and economic interests in its proprietary zinc TR-SX trade secrets and confidential information and unfairly and unlawfully shifting from TR to Defendants income and profit that should go to TR. Additionally, Defendants' false and misleading descriptions and representations of fact have deceived and are likely to deceive not only Defendants' own investors and shareholders, but also members of the trade and the general public.

  **Answer to Para. 78:** Defendants deny the allegations of Paragraph 78.

  **Complaint, Para. 79:**  On information and belief, Defendants' false and misleading statements about essential characteristics of its own goods and commercial activities are likely to and have impacted TR's sales, injured its business relationships and damaged TR's goodwill and reputation.

  **Answer to Para. 79:** Defendants deny the allegations of Paragraph 79.

  **Complaint, Para. 80:**  On information and belief, Defendants' acts of false

advertising have caused TR to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

**Answer to Para. 80:** Defendants deny the allegations of Paragraph 80.

**Complaint, Para. 81:** On information and belief, Defendants' conduct is willful, deliberate, intentional, and in bad faith.

**Answer to Para. 81:** Defendants deny the allegations of Paragraph 81.

**Complaint, Para. 82:** By reason of Defendants' false and misleading statements and actions, TR has sustained--and unless enjoined will continue to sustain--substantial injury and damage. Defendants have unlawfully and wrongfully derived income and profits and have been unjustly enriched as a result of Defendants' false and misleading statements and actions, and unless enjoined, will cause TR continuing irreparable harm for which TR has no adequate remedy at law.

**Answer to Para. 82:** Defendants deny the allegations of Paragraph 82.

## COUNT FOUR: FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

**Complaint, Para. 83:** TR repeats and realleges the averments of paragraphs 1-58 as if fully set forth herein.

**Answer to Para. 83:** Defendants repeat and reallege the answers to paragraphs 1 through 58 as if repeated verbatim herein.

**Complaint, Para. 84:** On information and belief, Defendants are illegally using and marketing TR's proprietary zinc TR-SX technology and have falsely designated TR's proprietary zinc TR-SX technology as their own zinc SX process.

**Answer to Para. 84:** Defendants deny the allegations of Paragraph 84.

**Complaint, Para. 85:** By falsely designating the origin of their zinc SX process and by making false and misleading representations of fact in the promotion and marketing of a zinc SX process, Defendants' acts and conduct, both in concert and severally, constitute unfair competition and/or false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(b).

**Answer to Para. 85:** Defendants deny the allegations of Paragraph 85.

**Complaint, Para. 86:**  On information and belief, Defendants' false designation of TR's proprietary zinc TR-SX technology as their own zinc SX process, and Defendants' false and misleading description of fact in the marketing and promotion of its zinc SX process, are likely to cause confusion, to cause mistake, and/or to deceive as to the affiliation, connection, or association of Defendants with TR and/or as to cause confusion, to cause mistake, and/or to deceive as to the origin, sponsorship, or approval of Defendants' goods, services or other commercial activities.

**Answer to Para. 86:** Defendants deny the allegations of Paragraph 86.

**Complaint, Para. 87:**   On information and belief, Defendants' false and misleading statements about essential characteristics of their own goods and commercial activities are likely to and have impacted TR's sales, injured its business relationships and damaged TR's goodwill and reputation.

**Answer to Para. 87:** Defendants deny the allegations of Paragraph 87.

**Complaint, Para. 88:**  On information and belief, Defendants' acts of unfair competition and/or false designation of origin have caused TR to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

**Answer to Para. 88:** Defendants deny the allegations of Paragraph 88.

**Complaint, Para. 89:**  On information and belief, Defendants' conduct is willful, deliberate, intentional, and in bad faith.

**Answer to Para. 89:** Defendants deny the allegations of Paragraph 89.

**Complaint, Para. 90:**  By reason of the foregoing acts of Defendants, TR has sustained--and unless Defendants' acts of unfair competition and/or false designation origin are enjoined, will continue to sustain--substantial injury and damage. Defendants have unlawfully and wrongfully derived income and profits and have been unjustly enriched as a result of the foregoing acts. Defendants' acts, unless enjoined, will cause TR continuing irreparable harm, to which TR has no adequate remedy at law.

**Answer to Para. 90:** Defendants deny the allegations of Paragraph 90.

## COUNT FIVE: VIOLATION OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT

**Complaint, Para. 91:** TR repeats and realleges the averments of paragraphs 1-58 as if fully set forth herein.

**Answer to Para. 91:** Defendants repeat and reallege the answers to paragraphs 1 through 58 as if repeated verbatim herein.

**Complaint, Para. 92:** Defendants' false and misleading statements and actions, both in concert and severally, constitute deceptive trade practices, including specific acts of trade disparagement, in violation of 815 ILCS 510/1, *et seq.*

**Answer to Para. 92:** Defendants deny the allegations of Paragraph 92.

**Complaint, Para. 93:** On information and belief, Defendants' false and misleading statements and actions, both in concert and severally, are likely to cause confusion or misunderstanding as to source, sponsorship or approval of Defendants' goods and/or services.

**Answer to Para. 93:** Defendants deny the allegations of Paragraph 93.

**Complaint, Para. 94:** On information and belief, Defendants' false and misleading statements and actions, both in concert and severally, create a likelihood of confusion as to the affiliation, connection or association of Defendants and their products and/or services with TR's well-known products and/or services.

**Answer to Para. 94:** Defendants deny the allegations of Paragraph 94.

**Complaint, Para. 95:** On information and belief, Defendants' false and misleading statements and actions, both in concert and severally, disparage and impugn the business, services, and/or products of TR.

**Answer to Para. 95:** Defendants deny the allegations of Paragraph 95.

**Complaint, Para. 96:** On information and belief, Defendants knew when they made the false and misleading statements that they were false and misleading and Defendants therefore have acted willfully and deliberately to deceive or to harm; in the alternative, Defendants' false and misleading statements were undertaken with reckless disregard to the truth or falsity of such acts and conduct.

**Answer to Para. 96:** Defendants deny the allegations of Paragraph 96.

**Complaint, Para. 97:** Defendants' false and misleading statements and actions, both in concert and severally, unless enjoined by this Court, will continue to mislead and deceive consumers and have caused and are causing great and irreparable harm and damage to TR's goodwill and reputation, for which TR has no adequate remedy at law.

**Answer to Para. 97:** Defendants deny the allegations of Paragraph 97.

## COUNT SIX: COMMON LAW UNFAIR COMPETITION

**Complaint, Para. 98:** TR repeats and realleges the averments of paragraphs 1-58 as if fully set forth herein.

**Answer to Para. 98:** Defendants repeat and reallege the answers to paragraphs 1 through 58 as if repeated verbatim herein.

**Complaint, Para. 99:** On information and belief, Defendants' false and misleading statements and actions, both in concert and severally, both constitute unfair competition in violation of common law.

**Answer to Para. 99:** Defendants deny the allegations of Paragraph 99.

**Complaint, Para. 100:** On information and belief, Defendants' false and misleading statements and actions, both in concert and severally, have been and continue to be deliberate and willful.

**Answer to Para. 100:** Defendants deny the allegations of Paragraph 100.

**Complaint, Para. 101:** Defendants' false and misleading statements and actions, both in concert and severally, have caused and are causing great and irreparable harm and damage to TR, and unless restrained and enjoined by this Court, said irreparable injury will continue.

**Answer to Para. 101:** Defendants deny the allegations of Paragraph 101.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses to Plaintiffs Complaint:

## FIRST AFFIRMATIVE DEFENSE

102.    This court lacks subject matter jurisdiction because the Complaint is premature, speculative, and unsupported by evidence. Fed. R. Civ. P. 12(b)(1).

## SECOND AFFIRMATIVE DEFENSE

103.    The Complaint fails to state a claim upon which relief can be granted because its allegations are not based on any conduct that has actually taken place and is therefore on its face premature, speculative, and unsupported by evidence, and by its failure to identify with particularity Plaintiff's alleged trade secrets which are said to have been misappropriated by any specific acts, what actual misrepresentations have been falsely made, what designation of origin actually has been falsely made, what trade practices actually have been deceptive, and what acts of unfair competition have actually taken place. Fed. R. Civ. P. 12(b)(6).

## THIRD AFFIRMATIVE DEFENSE

104.    The '520 patent has not been infringed by any process alleged to have been actually practiced, commercially or otherwise, by Defendants.

## FOURTH AFFIRMATIVE DEFENSE

105.    The '520 patent is invalid under one or more provisions of 35 U.S.C. §§ 101, 102, and 103 in view of one or more prior art references, alone or in combination, as applied to any of its asserted claims read in light of the specification and prosecution

history.  The prior art to be relied upon includes at least the following:

        a.      U.S. Patent No. 4,124,462 (filed Jan. 26, 1977) (the "'462 patent");

        b.      U.S. Patent No. 4,401,531 (filed Jun. 30, 1982) (the "'531 patent");

        c.      Inter. Pub. No. WO 94/28184 (filed May 24, 1994) (the "'184 application");

        d.      1 C.K. Gupta & T.K. Mukherjee, Hydrometallurgy in Extraction Processes (CRC Press 1990);

        e.      2 C.K. Gupta & T.K. Mukherjee, Hydrometallurgy in Extraction Processes (CRC Press 1990);

        f.      L. Rosato and M Berube, *Improved Jarosite Process*, International Symposium – World Zinc '93, 281-286 (1993) (the "Rosato publication"); and

        g.      Symposium, *Zinc '85*, PROC. INT'L SYMP. ON EXTRACTIVE METALLURGY ZINC (K. Tozawa ed., The Mining and Metallurgical Institute of Japan 1985) (the "Zinc 85 publication").

106.    The '520 patent is invalid under one or more paragraphs of 35 U.S.C. § 112, specifically the requirements of description, enablement to the full scope of the claims, best mode as contemplated by the inventors at the date of the invention, and definiteness of the claim language.

## FIFTH AFFIRMATIVE DEFENSE

107.    The '520 patent is unenforceable due to inequitable conduct, as set forth in Paragraphs 108 through 111.

108.    On information and belief, the '520 patent matured from an application

(the "'520 application") filed on June 12, 2002, with the United States Patent & Trademark Office (the "USPTO"), which claims priority to a PCT International Application No. ES00/000458 (the "PCT application") filed on December 1, 2000, which further claims priority to a Spanish Application No. ES009902777 filed on December 17, 1999 (collectively referred to as the "San Lorenzo applications"). The San Lorenzo applications name Daniel Martin San Lorenzo, Gustavo Diaz Nogueira, and Miguel Angel Garcia Leon (the "Applicants") as inventors and TR (the "Assignee") as the sole assignee of the San Lorenzo applications. The '520 application was filed and prosecuted in the United States by John C. McMahon, Esq. (the "Applicants' attorney") (U.S. Patent Registration No. 29,415), of the Law Office of John McMahon, P.O. Box 30069, Kansas City, MO 64112.

109.   On information and belief, Applicants, Applicants' attorney, and the Assignee (collectively referred to as the "Rule 56 Individuals"), violated their duty of candor and good faith under 37 C.F.R. § 1.56 in fraudulently dealing with the USPTO during the prosecution of the '520 application by intentionally and/or in bad faith and with the intent to deceive failing to disclose to the USPTO all information known by them to be non-cumulative and material to the patentability of the claims of the '520 application. The Rule 56 Individuals took at least the following intentional actions and/or inactions during the prosecution of the '520 application:

a.   One or more of the Applicants has authored or co-authored at least one publication (the "Authored Publications"), which taken individually or in combination with one or more of the other Authored Publications, prior art cited in the '520 application, prior art noted in this Answer, or the general knowledge of one skilled

in the art of hydrometallurgy during the pendency of the '520 application (collectively referred to as the "Prior Art Information Items"), established a *prima facie* case of unpatentability of the claims of the '520 application.   Further, one or more of the Authored Publications taken individually or in combination with one or more of the Prior Art Information Items, was materially contradicted by and was inconsistent with the positions taken by the Rule 56 Individuals in their assertion of arguments for the patentability of the claims of the '520 application and their attempts to counter the patent examiner's arguments for the unpatentability of the claims of the '520 application during the pendency of the '520 application.   These Authored Publications, none of which was disclosed to the patent examiner, include:

     i.     Daniel Martín, M.A. García, G. Díaz & J. Falgueras, *A New Zinc Solvent Extraction Application: Spent Domestic Batteries Treatment Plant*, SOC'Y CHEMICAL INDUSTRY 201, 201-206 (2000);

     ii.     G. Díaz & J. M. Regife, *Coping with Zinc Secondary Materials The Modified Zincex Route*, RECYCLING LEAD ZINC CHALLENGE 1990'S (1991);

     iii.     G. Díaz & D. Martín, *Modified Zincex Process: the Clean Safe and Profitable Solution to the Zinc Secondaries Treatment*, RESOURCES, CONSERVATION RECYCLING 43, 43-57 (1994);

     iv.     G. Díaz, D. Martín & C. Lombera, *Zinc Recycling Through the Modified Zincex Process*, THIRD INT'L SYMP. RECYCLING METALS ENGINEERED MATERIALS 623, 623-635 (1995);

     v.     M.A. García, A. Mejías, D. Martín & G. Díaz, *Upcoming Zinc Mine Projects: The Key for Success is Zincex Solvent Extraction*, LEAD-ZINC 2000 at

751, 751-761 (2000); and

        vi.     the Zinc 85 publication.

One example of a material misrepresentation of fact made to the USPTO by the Rule 56 Individuals is evidenced by the following passage:

> It is also noted that certain of the claims call for q physical and r chemical purification stages wherein q, r or a combination of q and r are at least 2 and are operated in a counter current mode. The prior art also fails to teach such a process.

(Statement made to the USPTO by Applicants' attorney to traverse the rejection of the claims of the '520 application on June 18, 2004). In fact, several of the Authored Publications disclose the advantages of using multiple physical and chemical purification stages in counter current mode, including the Zinc 85 publication.

        b.     In a "Combined Declaration and Power of Attorney" form (the "Declaration") filed with the USPTO on June 12, 2002, the same date the '520 application was filed, the Applicants expressly acknowledged their duty to disclose information that is material to the patentability of the claims of the '520 application as defined by 37 C.F.R. § 1.56 ("Rule 56 Duties"). The Declaration also granted Applicants' attorney power of attorney and identified the '520 application as claiming priority to the Spanish application and the PCT application.

        c.     A Preliminary Amendment and an Information Disclosure Statement ("IDS") were also filed on June 12, 2002. The IDS listed several items of art identified in the specification of the '520 application and an International Search Report

(the "ISR") for the PCT application dated February 13, 2001. Applicants' attorney signed the IDS on behalf of the Applicants and averred that the references listed in the IDS "in the belief and opinion of the undersigned, [are] the closest art of which applicant is aware of as of the date of execution of the Declaration. . . ." However, the Applicants did not reveal within the IDS any of the Authored Publications identified above.

        d.      An Office action was issued by the patent examiner on January 22, 2004 ("Office action"), which rejected all of the claims at issue. Subsequent to the issuance of the Office action, a paper entitled "Notice of Opposition to a European Patent" (the "Opposition") was filed with the European Patent Office on May 4, 2004, challenging the validity of all claims of European Patent No. 1258535 (the "'535 patent"). The '535 patent claims priority to the PCT application and at the time of the Office action included claims virtually identical to those in the '520 application and claims substantially similar to those in the subsequently issued '520 patent. The Opposition provides a detailed analysis of the obviousness of the claims of the '535 patent, of which claim 1 is the sole independent claim, and asserts, in part:

        i.      independent claim 1 is obvious in view of the '184 application alone or in combination with the Rosato publication or the publication entitled International Symposium – World Zinc '93 – Hobart, 10-13 October 1993 "Silica Control During Zinc Calcine Leaching at Cominco's Trail Operations" (the "Ashman publication");

        ii.      independent claim 1 is obvious in view of the '462 patent in light of one or more of the '531 patent, the Rosato publication, and the Ashman publication;

iii.      independent claim 1 is obvious in view of the '531 patent in light of one or more of the '184 application, the Rosato publication, and the Ashman publication; and

iv.      dependent claims 2-24 are obvious in light of one or more of the '184 application, the Rosato publication, the Ashman publication, the '531 patent, the '462 patent, U.S. Patent No. 4,572,771, and an article entitled "Productivity and Technology in the Metallurgical Industries," TMS-Publication, Dr. Michael Koch, John C. Taylor, Sep. 17-22, 1989 (the "Koch publication") (referred to herein as the "cited Opposition references").

The cited Opposition references taken individually or in combination with one or more of the other cited Opposition references or the Prior Art Information Items, established a *prima facie* case of unpatentability of the claims of the '520 application throughout the pendency thereof.  Further, the arguments or statements made in the Opposition with respect to the claims of the '535 patent, taken alone or in combination with one or more of the cited Opposition references or the Prior Art Information Items, established a *prima facie* case of unpatentability of the claims of the '520 application and/or refuted or was inconsistent with the positions taken by the Rule 56 Individuals in their assertion of arguments for the patentability of the claims of the '520 application or their attempts to counter the patent examiners arguments for the unpatentability of the claims of the '520 application during the pendency of same.

e.      An Amendment was filed on June 18, 2004, after the Opposition was filed, which did not inform the USPTO of the pending Opposition with respect to the corresponding '535 patent.  In the Amendment, Applicants' attorney again noted his

knowledge of the corresponding Spanish application and the PCT application by indicating that the '520 application:

> [W]as originally prepared in Spanish and in European format which resulted in certain translational and European practice artifacts in the claims.  Consequently, the claims have been amended to remove both the artifacts noted by the Examiner and as well as other artifacts that have been found to conform [sic] with U.S. practice without incorporating new subject matter.

Applicants' attorney also stated in the Amendment that the "cited Lorenzo patent is believed to be the closest prior art. . . ."  The reference to the Lorenzo patent means the '531 patent cited in the IDS.  Further, after traversing the rejections levied by the patent examiner on the original claims, Applicants' attorney also made a general averment of the patentability of some of the claims of the '520 application by noting "that certain of the claims call for q physical and r chemical purification stages wherein q, r or a combination of q and r are at least 2 and are operated in a counter current mode."  However, independent claims 1, 25, and 26 included no such limitation.

       f.    A Reply to the Opposition brief (the "Reply") was filed by a Dr. Joachim Hock ("Applicants' European Attorney") on December 9, 2004, traversing the arguments of invalidity levied against the '535 patent in the Opposition.  In discussing the claimed purification treatment of the zinc loaded organic solvent in the Reply, Applicants' European Attorney stated: "as both washing effects (physical and chemical) should operate synergically, claim 1 has been amended as outlined under section 2. . . ."

Claim 1 of the '535 was amended to state, in part (deletions in strikethrough and additions in underlining):

> [T]he purification treatment of the zinc loaded organic solvent, according to step f), is conducted in "q" physical and ~~/ or~~ "r" chemical purification (successive) zone(s), organic and aqueous streams operating in counter current mode, "r + q" being at least equal to ~~1~~ 2. . . .

The amendment made to claim 1 of the '535 patent and the statements made in the Reply of the necessity of at least one physical zone and at least one chemical zone to accurately claim the invention was non-cumulative and material to the patentability of the claims of the '520 application.  Further, the above noted amendment and statements refuted or were inconsistent with the positions taken by the Rule 56 Individuals in their assertion of arguments of the patentability of the claims of the '520 application or their opposition of arguments of the unpatentability of the claims of the '520 application during the pendency of same.

g.      The Rule 56 Individuals continued to intentionally withhold the above noted information and continued the above noted conduct in bad faith and with the intent to deceive throughout the prosecution of the '520 patent on March 22, 2005, even though Applicants' Attorney filed numerous papers with the USPTO, namely:

i.      a Supplemental Amendment on July 15, 2004, in response to a paper entitled "Notice of Non-Compliant Amendment" filed by the USPTO on July 7, 2004;

ii.      a "Response to Notice of Non Compliant Amendment"

filed on August 27, 2004, in response to a second "Notice of Non-Compliant Amendment" filed by the USPTO on August 13, 2004;

        iii.    a paper including an Abstract of the Invention on October 28, 2004, in response to a request for an abstract of the invention by the USPTO on October 20, 2004; and

        iv.    the issue fee on November 11, 2004, in response to a Notice of Allowance and a Notice of Allowability, which were mailed on September 10, 2004.

        h.    On April 14, 2005, a response to the Reply (the "Reply Response") was filed with the European Patent Office, which included non-cumulative information that was material to the patentability of the claims of the '520 patent, as similarly noted above in connection with the Opposition.

        i.    The Rule 56 Individuals continued to intentionally withhold the above noted information and continued the same conduct in bad faith after the issuance of the '520 patent when Applicants' Attorney filed a "Petition for Certificate of Correction" on May 6, 2005, requesting a correction to the '520 patent to claim priority to the PCT application and the Spanish application.  In so doing, the Rule 56 Individuals again acknowledged their awareness of the related applications and further averred that the failure to list the foreign application priority data was not the Applicants fault as it had already been provided to the USPTO.

        j.    A "Summons to Attend Oral Proceedings Pursuant to Rule 71(1) EPC" was issued on June 20, 2005, to determine whether the subject matter of claim 1 of the '535 patent involved an inventive step with regard to several documents cited in the

Opposition.

k.      A "Certificate of Correction" issued on September 6, 2005, in connection with the '520 patent claiming priority to the PCT application and the Spanish application.

110.    The materiality and non-cumulative nature of the cited Opposition references is further evidenced by the final revocation of the '535 patent by the European Patent Office on October 15, 2008, based on one or more of such references.

111.    The above noted information identified in paragraph 109 was material to the prosecution of the '520 application.  The information withheld was not cumulative to information already of record or being made of record during the prosecution of the '520 application and the withheld information established, by itself or in combination with other information, a *prima facie* case of unpatentability of the claims of the '520 application.   Further, the information refuted, or was inconsistent with, positions the Applicants took, by or through Applicants' Attorney and the Assignee, in opposing arguments of unpatentability relied on by the USPTO or in asserting arguments of patentability.

112.    Upon information and belief, failure to bring the above noted information identified in Paragraph 109 to the attention of the patent examiner was with the intent to deceive the patent examiner.

## SIXTH AFFIRMATIVE DEFENSE

113.    In view of the prior art and by virtue of the proceedings in the United States Patent and Trademark Office, the European Patent Office, and other foreign patent offices, and the conduct, statements, admissions, misrepresentations, and arguments made

by the Applicants of the '520 patent during the prosecution of the '520 application that matured into the '520 patent and the conduct, statements, admissions, misrepresentations, and arguments made by the Applicants during the prosecution and all post-prosecution proceedings of any foreign counterpart applications related to the '520 patent, Plaintiffs are estopped from asserting any construction of the claims of the '520 patent, which would impermissibly broaden the literal scope of the claims thereof to cover or include any alleged acts of infringement of which Plaintiffs complain.  Specifically, on information and belief, and as presently advised, the claims of the '520 patent must be construed in light of the following:

a.     The Office action rejected claims 1-16, 19, and 20 under 35 U.S.C. § 103(a) as being unpatentable and indicated that claims 17 and 18 would be allowable if certain § 112 deficiencies were remedied and if rewritten to include all of the limitations of the base claim and any intervening claim.  The Amendment filed in response to the Office action provided new independent claim 25, which was claim 18 (indicated as claim 17 in the Office action) rewritten into independent form to include the limitations of independent claim 1.  It is noted that the incorporation of the subject matter of claim 18 into independent claim 1 was made for reasons related to the patentability of new claim 25, as was suggested in the Office action, and therefore new claim 25 should be found to have lost any scope of equivalents to the amended subject matter.

b.     Further, in traversing the rejection of independent claim 1, and of all the claims dependent thereon, Applicants' Attorney distinguished the prior art from the claimed invention by noting that the prior art did not disclose a process having at least two neutralization zones.  The statements made by Applicants' Attorney in defining the

invention over the prior art should therefore be found to preclude any scope of equivalents to the claim limitation of having at least two neutralization zones in independent claim 1, the claims dependent thereon, and any other claims in the '520 patent having an identical or similar limitation.

       c.      Still further, in response to the Opposition of the '535 patent, the Reply included amendments to claim 1 thereof, which provided, in part (deletions in strikethrough and additions in underlining):

> "[T]he purification treatment of the zinc loaded organic
>
> solvent, according to step f), is conducted in "q" physical
>
> and ~~/ or~~ "r" chemical purification (successive) zone(s),
>
> organic and aqueous streams operating in counter current
>
> mode, "r + q" being at least equal to ~~1~~ <u>2</u>. . . ."

Applicants' European Attorney also noted that "as both washing effects (physical and chemical) should operate synergically, claim 1 has been amended as outlined under section 2. . . ."  In light of the arguments and amendments made in the corresponding '535 patent to define the Applicants invention over the prior art, any construction of the claims of the '520 patent should be literally limited to at least one physical "q" zone and at least one chemical "r" zone.

      114.    Plaintiffs are estopped from asserting any construction of the claims of the '520 patent, which would cover or include any of the alleged acts of infringement of which Plaintiffs complain.

## COUNTERCLAIMS

While reserving the right to assert lack of subject matter jurisdiction, Defendants hereby counterclaim against Plaintiff for a Declaratory Judgment of patent invalidity, unenforceability, non-infringement, bad faith litigation, false advertising, false designation of origin, unfair competition, and violation of the Sherman Act and Illinois Deceptive Trade Practices Act, and allege as follows:

115.    Counterclaim Plaintiff Big River Zinc Corporation, is a corporation organized and existing under the laws of Delaware, having its principal place of business at 2401 Mississippi Avenue, Sauget, Illinois 62201, and Counterclaim Plaintiff ZincOx Resources PLC is a corporation organized and existing under the laws of the United Kingdom, having its principal place of business at Knightway House, Park Street, Bagshot, Surrey, GU19 5AQ, United Kingdom (collectively referred to as "Counter-Plaintiffs").

116.    Upon information and belief, Counterclaim Defendant Tecnicas Reunidas SA ("Counter-Defendant") is a corporation organized and existing under the laws of Spain, having its principal place of business at c/Arapiles, 14, 28015 MADRID (SPAIN).

117.    Counter-Defendant purports to be the owner of the '520 patent.

118.    This counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the patent laws of the United States, 35 U.S.C. § 1 *et seq.*; the Lanham Act, 15 U.S.C. §§ 1125(a) and 1126(h); the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.;* the Sherman Act, 15 U.S.C. § 2; the common law of the State of Illinois; and, through implementation of the Paris Convention for the Protection of Industrial Property.

119.   Subject matter jurisdiction exists under the Federal jurisdiction noted in Paragraph 118 above and the ancillary related State statutes.

120.   Venue is provided by the filing of the Complaint in this Court.

121.   An actual and justiciable controversy exists between the Counter-Plaintiffs and the Counter-Defendant as to the infringement, validity, and enforceability of the '520 patent and as to the pursuit of the present action in bad faith and in contravention of the laws of fair competition, as evidenced, *inter alia,* by the Complaint and Answer in this action.

## COUNT I: INVALIDITY OF THE '520 PATENT

122.   The '520 patent is invalid under at least one or more provisions of 35 U.S.C. §§ 101, 102, 103, and 112.  Counter-Plaintiffs repeat and reallege the allegations contained in Paragraphs 105 and 106 of their Answer above.

## COUNT II: UNENFORCEABILITY OF THE '520 PATENT

123.   The '520 patent is unenforceable due to inequitable conduct.  Counter-Plaintiffs repeat and reallege the allegations contained in Paragraphs 107 through 112 of their Answer above.

## COUNT III: NON-INFRINGEMENT OF THE '520 PATENT

124.   Counter-Plaintiffs have not infringed and do not infringe any claim of the '520 patent.

## COUNT IV: FEDERAL FALSE ADVERTISING

125.    Counter-Plaintiffs repeat and reallege the averments of paragraphs 1-124 of the Answer and the Counterclaims as if fully set forth herein.

126.    On information and belief, Counter-Defendant has made false and misleading descriptions and representations of fact in their advertising and promotional materials concerning the nature, characteristics, qualities, and geographical origin of Counter-Defendant's goods, services, and commercial activities that violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

127.    On information and belief, Counter-Defendant's false and misleading descriptions and representations of fact have deceived and are likely to deceive purchasers and consumers of zinc SX process technology into purchasing from Counter-Defendant instead of from Counter-Plaintiffs, thereby injuring Counter-Plaintiffs' economic interests and unfairly and unlawfully shifting from Counter-Plaintiffs to Counter-Defendant income and profit that should go to Counter-Plaintiffs. Additionally, upon information and belief, Counter-Defendant's dissemination of the allegations of its Complaint herein, which include false and misleading descriptions and representations of fact, was made with the intent to mislead and has deceived and is likely to deceive not only Counter-Defendant's own investors and shareholders, but also members of the trade and the general public.

128.    On information and belief, Counter-Defendant's false and misleading statements about essential characteristics of its own goods and commercial activities are likely to and have impacted Counter-Plaintiffs' sales, injured its business relationships and damaged Counter-Plaintiffs' goodwill and reputation.

129.    On information and belief, Counter-Defendant's acts of false advertising have caused Counter-Plaintiffs to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

130.    On information and belief, Counter-Defendant's conduct is willful, deliberate, intentional, and in bad faith.

131.    By reason of Counter-Defendant's false and misleading statements and actions, Counter-Plaintiffs have sustained, and unless enjoined, will continue to sustain substantial injury and damage. Counter-Defendant has unlawfully and wrongfully derived income and profit and has been unjustly enriched as a result of Counter-Defendant's false and misleading statements and actions, and unless enjoined, will cause Counter-Plaintiffs continuing irreparable harm for which Counter-Plaintiffs have no adequate remedy at law.

## COUNT V: FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

132.    Counter-Plaintiffs repeat and reallege the averments of paragraphs 1-131 of the Answer and the Counterclaims as if fully set forth herein.

133.    On information and belief, Counter-Defendant has falsely designated certain zinc SX processes, as noted in the Complaint, as being maintained in confidence and proprietary in nature to Counter-Defendant.

134.    By falsely designating the confidential nature of these certain zinc SX processes and by making false and misleading representations of fact in the promotion and marketing of these zinc SX processes, Counter-Defendant's acts and conduct constitute unfair competition and/or false designation of origin in violation of Section

43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

135.    On information and belief, Counter-Defendant's false designation of these certain zinc SX processes as their confidential and proprietary zinc SX processes, and Counter-Defendant's false and misleading description of fact in the marketing and promotion of its zinc SX processes, are likely to cause confusion, to cause mistake, and/or to deceive as to the affiliation, connection, or association of Counter-Plaintiffs with Counter-Defendant and/or as to cause confusion, to cause mistake, and/or to deceive as to the origin, sponsorship, or approval of Counter-Defendant's goods, services or other commercial activities.

136.    On information and belief, Counter-Defendant's false and misleading statements about essential characteristics of their own goods and commercial activities are likely to and have impacted Counter-Plaintiffs' sales, injured its business relationships and damaged Counter-Plaintiffs' goodwill and reputation.

137.    On information and belief, Counter-Defendant's acts of unfair competition and/or false designation of origin have caused Counter-Plaintiffs to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

138.    On information and belief, Counter-Defendant's conduct is willful, deliberate, intentional, and in bad faith.

139.    By reason of the foregoing acts of Counter-Defendant, Counter-Plaintiffs have sustained, and unless Counter-Defendant's acts of unfair competition and/or false designation of origin are enjoined, will continue to sustain, substantial injury and damage.    Upon information and belief, Counter-Defendant has unlawfully and wrongfully derived income and profit and has been unjustly enriched as a result of the

foregoing acts. Counter-Defendant's acts, unless enjoined, will cause Counter-Plaintiffs continuing irreparable harm, to which Counter-Plaintiffs have no adequate remedy at law.

## COUNT VI: VIOLATION OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT

140.    Counter-Plaintiffs repeat and reallege the averments of paragraphs 1-139 of the Answer and the Counterclaims as if fully set forth herein.

141.    On information and belief, Counter-Defendant's false and misleading statements and actions constitute deceptive trade practices, including specific acts of trade disparagement, in violation of 815 ILCS 510/1, *et seq.*

142.    On information and belief, Counter-Defendant's false and misleading statements and actions are likely to cause confusion or misunderstanding as to source, sponsorship or approval of Counter-Defendant's goods and/or services.

143.    On information and belief, Counter-Defendant's false and misleading statements and actions create a likelihood of confusion as to the affiliation, connection, or association of Counter-Defendant and their products and/or services with Counter-Plaintiffs' well-known products and/or services.

144.    On information and belief, Counter-Defendant's false and misleading statements and actions disparage and impugn the business, services, and/or products of Counter-Plaintiffs.

145.    On information and belief, Counter-Defendant knew when they made the false and misleading statements that they were false and misleading and Counter-Defendant therefore has acted willfully and deliberately to deceive or to harm; in the alternative, Counter-Defendant's false and misleading statements were undertaken with

43

reckless disregard to the truth or falsity of such acts and conduct.

146.    Counter-Defendant's false and misleading statements and actions, unless enjoined by this Court, will continue to mislead and deceive consumers and have caused and are causing great and irreparable harm and damage to Counter-Plaintiffs' goodwill and reputation, for which Counter-Plaintiffs have no adequate remedy at law.

## COUNT VII: COMMON LAW UNFAIR COMPETITION

147.    Counter-Plaintiffs repeat and reallege the averments of paragraphs 1-146 of the Answer and the Counterclaims as if fully set forth herein.

148.    On information and belief, Counter-Defendant's false and misleading statements and actions constitute unfair competition in violation of common law.

149.    On information and belief, Counter-Defendant's false and misleading statements and actions have been and continue to be deliberate and willful.

150.    Counter-Defendant's false and misleading statements and actions have caused and are causing great and irreparable harm and damage to Counter-Plaintiffs, and unless restrained and enjoined by this Court, said irreparable injury will continue.

## COUNT VIII: ANTITRUST VIOLATION - WALKER PROCESS

151.    Counter-Plaintiffs repeat and reallege the averments of paragraphs 1-150 of the Answer and the Counterclaims as if fully set forth herein.

152.    On information and belief, Counter-Defendant's maintenance and enforcement of the '520 patent obtained by fraud on the USPTO is a violation under § 2 of the Sherman Act. 15 U.S.C. § 2.

153.    On information and belief, the '520 patent was obtained through knowing

and willful fraud on the USPTO by the omission and or misrepresentation of material and non-cumulative prior art references and information as noted in Paragraphs 107 through 112.

154.   On information and belief, Counter-Defendant knew of the fraud on the USPTO in connection with the '520 patent when this suit was brought.

155.   On information and belief, Counter-Defendant by virtue of its professed market power resulting from its "being recognized as the world leader in proprietary zinc SX technologies" has monopolized or attempted to monopolize a segment of the zinc SX market through the fraudulently obtained '520 patent with a reasonable probability of success.

## COUNT IX: BAD FAITH LITIGATION

156.   Counter-Plaintiffs repeat and reallege the averments of paragraphs 1-155 of the Answer and the Counterclaims as if fully set forth herein.

157.   On information and belief, Counter-Defendant at the time of filing the Complaint knew or should have known that the '520 patent was unenforceable based on one or more provisions of 35 U.S.C. §§ 101, 102, 103, and 112, as noted above in Paragraphs 105 and 106, and that the '520 patent was invalid based on inequitable conduct practiced before the USPTO in connection with the prosecution of the '520 application, as noted above in Paragraphs 107 through 112.

158.   On information and belief, Counter-Defendant through the actions and inactions of its individual officers, directors, and managing agents, to be named as discovery progresses, knew or should have known at the time of filing the Complaint that the allegations of threatened or actual misappropriation of trade secrets, as noted in

Paragraphs 68 through 75 of the Complaint, the allegations of federal false advertising, unfair competition, and false designation of origin, as noted in Paragraphs 76 through 90 of the Complaint, the allegations of violation of the Illinois Deceptive Trade Practices Act, as noted in Paragraphs 91 through 97, and the allegations of common law unfair competition, as noted in Paragraphs 98 through 101, were unfounded and baseless.

159.   On information and belief, the above noted acts alleged in this count were made in an attempt to unlawfully force Counter-Plaintiffs to cease otherwise lawful commercial activity and/or to coerce Counter-Plaintiffs to license Counter-Defendants purported proprietary SX technology, which at all relevant times was commonly well known to the public at large.

## PRAYER FOR RELIEF

**WHEREFORE,** Counter-Plaintiff prays for an adjudication as follows:

A.   that Plaintiff's/Counter-Defendant's Complaint be dismissed with prejudice;

B.   that the '520 patent be declared invalid and/or unenforceable;

C.   that the '520 patent be declared not infringed;

D.   that this case be declared exceptional under 35 U.S.C. § 285, and that Defendants/Counter-Plaintiffs be awarded their reasonable attorney fees, costs, and expenses incurred in connection with this action;

E.   that this Court find that Plaintiff's/Counter-Defendant's acts and conduct constitute unfair competition, false advertising, and/or false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B), and

46

that such acts and conduct have been deliberate and willful;

F.     that this Court find that Plaintiff's/Counter-Defendant's acts and conduct constitute deceptive trade practices in violation of 815 ILCS 510/1, *et seq.*, and that such acts and conduct have been deliberate and willful;

G.     that this Court find that Plaintiff's/Counter-Defendant's acts and conduct constitute unfair competition in violation of common law, and that such acts and conduct have been deliberate and willful;

H.     that this Court find that Plaintiff's/Counter-Defendant's acts and conduct constitute a violation under § 2 of the Sherman Act, and that such acts and conduct have been deliberate and willful;

I.     that this Court find that Plaintiff's/Counter-Defendant's acts and conduct constitute bad faith litigation, and that such acts and conduct have been deliberate and willful;

J.     an award of costs and pre-judgment and post-judgment interest Defendants/Counter-Plaintiffs have been forced to incur pursuant to 15 U.S.C. § 1117 and other applicable law;

K.     an award of treble damages for willful actions pursuant to 15 U.S.C. § 1117 and other applicable law;

L.     a finding that this case is an "exceptional case" within the meaning of 15 U.S.C. § 1117, 15 U.S.C. § 2, and other applicable law due to, *inter alia,* the above actions of Plaintiff/Counter-Defendant;

M.     an award of costs and attorneys fees and other expenses Defendants/Counter-Plaintiffs have been forced to incur pursuant to 15 U.S.C. § 1117

and other applicable law; and

N.    that this Court grant Defendants/Counter-Plaintiffs such other further relief as the Court deems appropriate.

## JURY DEMAND

Defendant/Counter-Plaintiff hereby demands trial by jury on all issues triable to a jury.

BIG RIVER ZINC CORPORATION and
ZINCOX RESOURCES PLC

Dated: October 23, 2008          By

William E. McCracken
Illinois Bar No. 3127453
MCCRACKEN & FRANK LLP
311 South Wacker, Suite 2500
Chicago, IL 60606
Phone: 312.263.4700
Fax: 312.263.3990
Email: wmccracken@mccrackenfrank.com

Of Counsel:

Richard J. Burke
Illinois Bar No. 06255504
Richard J. Burke LLC
1010 Market St., Suite 660
St. Louis, Missouri 63101
Phone: 314.880.7000
Fax: 314.880.7777
Email: rich@richardjburke.com

Edward M. O'Toole
Illinois Bar. No. 02125552
MCCRACKEN & FRANK LLP
311 South Wacker, Suite 2500
Chicago, IL 60606
Phone: 312.263.4700
Fax: 312.263.3990
eotoole@mccrackenfrank.com

Nicholas P. Schmidbauer
Illinois Bar. No. 6279699
MCCRACKEN & FRANK LLP
311 South Wacker, Suite 2500
Chicago, IL 60606
Phone: 312.263.4700
Fax: 312.263.3990
nschmidbauer@mccrackenfrank.com

Nicole A. Bashor
Illinois Bar No. 6292348
MCCRACKEN & FRANK LLP
311 South Wacker, Suite 2500
Chicago, IL 60606
Phone: 312.263.4700
Fax: 312.263.3990
nbashor@mccrackenfrank.com

Attorneys for Defendants BRZ and ZincOx

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 23, 2008, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following counsel of record via e-mail transmission:

- Gordon R. Broom          grb@heplerbroom.com
- R. Mark Halligan          mark.halligan@lovells.com
- Mary Beth Wilkinson  Marybeth.wilkeinson@lovells.com
- John M. O'Bryan          john.obryan@lovells.com
- Deanna R. Swits          deanna.swits@lovells.com
- Bryan J. Vogel          bryan.vogel@lovells.com
- Mark Boyer          mark.boyer@lovells.com

Dated: October 23, 2008

By: _____

William E. McCracken
Illinois Bar No. 3127453
MCCRACKEN & FRANK LLP
311 South Wacker, Suite 2500
Chicago, IL 60606
Phone: 312.263.4700
Fax: 312.263.3990
Email: wmccracken@mccrackenfrank.com